DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellants, E.C. Trading, LC ("E.C. Trading"), and Hyung Kun Chun, appeal the decision of the Summit County Court of Common Pleas, which entered judgment in favor of appellee, NFC Financial, Inc. ("NFC"). This Court reverses.
 I. {¶ 2} Appellants own and operate several dollar stores in Texas. On May 1, 2001, Mr. Chun, on behalf of E.C. Trading, signed three leases as lessee to lease nine ATM machines from Credit Card Center ("CCC"). Preferred Capital, Inc. was named as lessor on the three leases. The leases provided that the *Page 2 
parties agreed that the leases would qualify as statutory finance leases under Article 2A of the Uniform Commercial Code, in that the lessee has selected both the equipment and the supplier from whom the lessor is to purchase the equipment. Mr. Chun also signed an acknowledgement and acceptance of equipment on each lease. Furthermore, Mr. Chun personally guaranteed payment and performance under the terms of each lease.
 {¶ 3} After appellants accepted delivery of the equipment, but before Preferred Capital signed or funded the leases, CCC filed for bankruptcy. The Bankruptcy Court for the Eastern District of Pennsylvania ordered the transfer of certain CCC assets to NFC, including the IBNF assets, i.e,. the "installed but not funded" ATM machines, pursuant to an Asset Purchase Agreement to be executed by the bankruptcy trustee and the president of NFC. Pursuant to the Asset Purchase Agreement, NFC acquired the IBNF ATMs and "the exclusive right to solicit, contact, deal with, and contract with all of Debtor's former and existing CCC Customers with respect to ATM products and services for a period of twelve (12) calendar months beginning on the Closing Date[.]" At closing, NFC was to receive from the bankruptcy trustee several things, including "an assignment of any leases and any non-royalty bearing license agreements (including software licenses needed to operate the IBNF ATM) included in the Acquired Assets[.]"
 {¶ 4} The leases at issue contain a choice of law and venue provision, requiring that any action regarding the leases be brought in Summit County or in *Page 3 
the county of the lessor's principal place of business. The choice of law and venue provision also expressly provides: "THIS LEASE SHALL NOT BE EFFECTIVE UNTIL SIGNED BY LESSOR AT ITS PRINCIPAL OFFICE LISTED ABOVE." No representative of Preferred Capital ever signed the lease agreements. Rather, Glenn Fagerlin, owner of NFC, signed the leases in the box captioned "Accepted by Preferred Capital, Inc. as Lessor" as follows: "Glenn Fagerlin, NFC, Purchaser." Mr. Fagerlin did not date his signature, but he testified that he signed the leases after the lease documents were delivered by the bankruptcy trustee after they completed the purchase. The Asset Purchase Agreement, whereby NFC acquired CCC assets, was executed on October 30, 2002. Accordingly, Mr. Fagerlin could not have signed the leases until at least 18 months after Mr. Chun signed them.
 {¶ 5} Based on its acquisition of the above-referenced assets, NFC attempted to collect the lease payments from appellants. Appellants entered into discussions with NFC about the leases, but appellants ultimately refused to make any lease payments to NFC.
 {¶ 6} Appellee filed a complaint against appellants for breach of contract and replevin. A bench trial was held. The trial court issued a judgment entry in which it found that appellants validly executed and entered into three UCC 2A finance leases with Preferred Capital; that Mr. Chun personally guaranteed the three leases and that he intended to enter into those contracts upon signing *Page 4 
although he failed to read the contracts in detail; that appellants accepted delivery of the ATMs; that appellants sent the first and last lease payments to CCC; that the bankruptcy court authorized and approved the sale of IBNF assets, including title to the three leases between appellants and Preferred Capital, to NFC; and that appellants defaulted on the leases. The trial court further discounted appellants' argument that no contract existed because Preferred Capital never signed the leases. The trial court found that appellants' promise under the lease became irrevocable and independent upon their acceptance of the goods. Based on those findings, the trial court entered judgment in favor of NFC in the amount of $164,422.53, plus interest and costs.
 {¶ 7} Appellants timely appeal, raising one assignment of error for review.
 ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED AS A MATTER OF LAW BY ENTERING JUDGMENT IN FAVOR OF PLAINTIFF."
 {¶ 8} Appellants argue that the trial court erred by entering judgment in favor of NFC in its action for breach of lease, when NFC was a stranger to the contract without authority to accept appellants' offer. This Court agrees.
 {¶ 9} This Court has stated:
 "Whether verbal or written, the general rule of contract formation is that there must be: (1) an offer; (2) acceptance; (3) consideration; and (4) a legal subject matter. Therefore, for a contract to exist there must first be mutual assent or a meeting of the minds as to the offer and acceptance." (Internal quotations and citations omitted.) Roberts's Auto Center, Inc. v. Helmick, 9th Dist. No. 21073, 2003-Ohio-640, at ¶ 28. *Page 5 
 {¶ 10} This Court has further stated:
 "If a contract is clear and unambiguous, its interpretation is * * * a matter of law, and no issue of fact remains to be determined. Unambiguous contract terms are reviewed de novo. When reviewing an unambiguous contract, `the trial court must defer to the express terms of the contract and interpret it according to its plain, ordinary, and common meaning.'" (Internal citations omitted.) Denman v. State Farm Ins. Co., 9th Dist. No. 05CA008744, 2006-Ohio-1308, at ¶ 13.
 {¶ 11} In this case, the lease agreements contained the following provision: "THIS LEASE SHALL NOT BE EFFECTIVE UNTIL SIGNED BY LESSOR AT ITS PRINCIPAL OFFICE LISTED ABOVE."[1] The lessor "listed above" was Preferred Capital. Appellants sought and secured credit approval from Preferred Capital in anticipation of leasing ATMs from CCC. Neither party disputes that no representative of Preferred Capital ever signed the lease. Accordingly, the lease could only become effective upon the signature of someone else with the authority to act in the same capacity as Preferred Capital.
 {¶ 12} NFC argues that it assumed the authority to act as lessor under the leases, when it purchased CCC's assets from the bankruptcy trustee. What NFC purchased, however, were the ATMs themselves, the return of which it has already secured. NFC also purchased "the exclusive right to solicit, contact, deal with, and contract with all of Debtor's former and existing CCC Customers with respect to ATM products and services for a period of twelve (12) calendar months *Page 6 
beginning on the Closing Date[.]" The order out of the bankruptcy court directed that "[o]n the Closing Date, this Order shall be construed and shall constitute for all purposes as a full and complete general assignment, conveyance and transfer of the IBNF Assets from the Debtor's estate to NFC or as a bill of sale transferring good and marketable title in such assets to NFC." By the terms of these two documents, therefore, NFC stepped into CCC's shoes and acquired only those assets and rights which had belonged to CCC, not to any third party such as Preferred Capital.
 {¶ 13} Under law, NFC acquired no right to step into the shoes of the lessor in regard to these leases, because CCC had no right to act as lessor. The leases stated that the parties acknowledged that the leases qualified as statutory finance leases under Article 2A of the Uniform Commercial Code, codified in R.C. Chapter 1310. R.C. 1310.01(A)(7) sets out three mandatory criteria for a "finance lease," including that the "lessor does not select, manufacture, or supply the goods." R.C.1310.01(A)(7)(a). By assuming the role of CCC in regard to the ATMs, NFC effectively became the supplier of the ATMs and was, therefore, prohibited from assuming the role of lessor in these transactions, where the agreement was to qualify as a statutory lease. *Page 7 
 {¶ 14} Appellee argues that appellants are bound under the terms of the leases, because they also contained the following provision: "THIS LEASE IS NOT CANCELABLE OR TERMINABLE BY LESSEE." Common sense dictates that such a provision would only be applicable if the leases were otherwise validly executed. The leases did not become valid upon the creation of the documents. Rather, they became valid and enforceable only upon some indication of mutual assent by the parties thereto, i.e., upon signature and execution of the parties. Had a representative of Preferred Capital, or someone with the authority to act within the same capacity as Preferred Capital as lessor, signed the leases, then both this provision and appellants' acceptance of the equipment would have precluded appellants' cancellation or termination of the leases. That is not the case, however.
 {¶ 15} Finally, NFC argues that the order of the bankruptcy court is controlling, and appellants' challenges constitute nothing more than a collateral attack on that order. This Court finds that appellants' challenge does not constitute a collateral attack on the bankruptcy court's order. The bankruptcy court's order merely gave NFC the right to the ATMs themselves and the right to negotiate with CCC's customers with respect to ATM products. NFC indeed attempted to negotiate with appellees. Unfortunately for NFC, those negotiations were unsuccessful. *Page 8 
 {¶ 16} For the reasons enunciated above, this Court finds that the trial court erred as a matter of law by entering judgment in favor of appellee on its cause of action for breach of lease, as no valid lease agreements existed between appellants and NFC. Appellants' assignment of error is sustained.
 III. {¶ 17} Appellants' assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 9 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellee.
SLABY, P. J. BAIRD, J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] While most provisions of the lease were printed in lower case, this provision was one of only a few printed in all upper case. *Page 1